IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-00324-PAB

KATRINA TERRY,

      Plaintiff,

v.

WSA, LLC,

      Defendant.

_____

**ORDER**
_____

      This matter comes before the Court on plaintiff's Motion for Default Judgment.

[Docket No. 9].  The Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28

U.S.C. § 1337.

## I.  BACKGROUND

      Because of the Clerk of Court's entry of default, Docket No. 8, the allegations in

plaintiff's complaint, Docket No. 1, are deemed admitted.  *Olcott v. Del. Flood Co.*, 327

F.3d 1115, 1125 (10th Cir. 2003).  Sometime before February 2014, plaintiff incurred a

financial obligation that was primarily for personal, family, or household purposes.

Docket No. 1 at 3, ¶ 8.  The debt was later transferred to defendant for the purposes of

collection.  *Id.* at 4, ¶ 9.  In about November 2013, defendant left plaintiff a voicemail

concerning plaintiff's debt.  *Id.* ¶ 12.  In that call, defendant did not inform plaintiff that

defendant was a debt collector calling for the purposes of attempting to collect on a

debt, and that any information obtained would be used for that purpose, but rather

informed plaintiff that defendant would file criminal charges if she did not return the

phone call.  *Id.*  On another occasion in late November 2013, defendant again called plaintiff and spoke with plaintiff on the phone.  *Id.*  In that conversation, defendant told plaintiff that it intended to have a warrant issued for plaintiff's arrest and that plaintiff's driver's license would be suspended if she did not pay her debt.  *Id.*  On another occasion (date unspecified), defendant informed plaintiff that her driver's license would be suspended the following day.  *Id.*  According to plaintiff, defendant knew that it could not initiate criminal charges against plaintiff or act to suspend plaintiff's driver's license at the time it made these representations.  *Id.*

Plaintiff brings a claim for relief for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  Though served with the complaint and summons, defendant did not answer or otherwise respond to plaintiff's complaint. Accordingly, the Clerk of Court entered default on March 3, 2014.  Docket No. 8.

## II.  ANALYSIS

### A.  Default Judgment

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55.  First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a).  Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b).  *See Williams v. Smithson*, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "'committed to the district court's sound discretion."  *Olcott*, 327 F.3d at 1124 (citation omitted).  In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits."

2

*Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* It serves to protect plaintiffs against "interminable delay and continued uncertainty as to his rights." *Id.* at 733. When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard"). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* Charles Wright, Arthur Miller & Mary Kane, Fed. Prac. & Proc. § 2688 (3d ed. 2010). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* at 63. A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.* 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded

facts must "permit the court to infer more than the mere possibility of misconduct."

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation and alteration marks

omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a

complaint still must contain either direct or inferential allegations respecting all the

material elements necessary to sustain a recovery under some viable legal theory."

*Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation

omitted).

> While the FDCPA forbids a variety of conduct,
>
> The substantive heart of the FDCPA lies in three broad prohibitions.  First, a 'debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.' § 1692d.  Second, a 'debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.' § 1692e.  Third, a 'debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.' § 1692f.

*Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).  To establish a violation of the

FDCPA, plaintiff must show that (1) she is a "consumer" within the meaning of 15

U.S.C. § 1692a(3),[1] (2) her debt arises out of a transaction entered into primarily for

personal, family, or household purposes, 15 U.S.C. § 1692a(5),[2] (3) defendant is a "debt

collector" within the meaning of 15 U.S.C. § 1692a(6), and (4) defendant, through its

acts or omissions, violated a provision of the FDCPA.  *See Nikkel v. Wakefield &*

---

[1]"The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).

[2]"The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

*Assoc., Inc.*, No. 10-cv-02411-PAB-CBS, 2012 WL 5571058 at *10 (D. Colo. Nov. 15, 2012).

The Court finds that the complaint, deemed admitted for the purposes of this motion, sufficiently alleges a violation of the FDCPA.  Plaintiff alleges that she is a consumer who incurred a debt for personal, family or household purposes, Docket No. 1 at 3, ¶ 8, and that defendant is a "debt collector" as defined by the FDCPA.  *Id.* at 2, ¶ 4. Moreover, plaintiff's allegations support a finding that defendant used tactics intended to harass plaintiff via threatening criminal charges in violation of 15 U.S.C. § 1692d, threatened to take action that cannot legally be taken in violation of 15 U.S.C. §§ 1692e(5) and (10), and used unfair or unconscionable methods to collect on plaintiff's debt in violation of 15 U.S.C. § 1692f.  Because plaintiff has properly stated a claim for violation of the FDCPA, the Court will grant plaintiff's motion for default judgment.

### B.  Statutory Damages

The FDCPA provides for statutory damages in an amount "as the court may allow, but not exceeding $1,000."  In determining the amount of statutory damages to award, courts are to consider the debt collector's conduct, specifically "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  15 U.S.C. § 1692k(b)(1).

Courts have denied an award of statutory damages in cases where the violation is isolated, non-threatening, and unintentional.  *See, e.g., Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989); *Emanuel v. Am. Credit Exchange*, 870

F.2d 805, 809 (2d Cir. 1989).  In other cases, courts have awarded up to the full $1,000 where debt collectors violated the FDCPA by sending one or more letters that did not contain required disclosures or were otherwise false or misleading.  *See, e.g., Francis v. Snyder*, 2006 WL 1236052, at *1 (N.D. Ill. May 4, 2006) (awarding $1,000 in statutory damages where debt collector sent letter threatening baseless lawsuit); *Rivera v. Nat'l Check Processing, LLC*, 2011 WL 996340, at *2 (W.D. Tex. Mar. 17, 2011) (awarding $1,000 in statutory damages where the defendant "continuously" called the plaintiff's home and work phones, threatening "to have her arrested, bring charges against her, and to add attorneys' fees to the debt").

The Court finds that plaintiff's allegations that defendant made multiple calls threatening criminal action and other legal action (such as suspending plaintiff's driver's license) support a substantial award of statutory damages, but falls short of justifying the maximum allowable amount.  "[M]aximum statutory damages under 15 U.S.C. § 1692k(a)(2)(A) should be reserved for egregious violations of the FDCPA, for example, cases where the defendant repeatedly uses abusive language, improperly threatens legal action or the use of self-help, or aggressively intrudes on a consumer's home, place of employment, or [peace] of mind."  *Lassiter v. Integrity Solution Servs., Inc.*, No. 13-cv-00268-PAB-MJW, 2014 WL 1977216 at *2 (D. Colo. May 15, 2014) (citing *Sterling v. Am. Credit & Collections, LLC*, No. 11-cv-03113-DME-BNB, 2012 WL 3553757, at *4 (D. Colo. Aug. 16, 2012).  Plaintiff alleges that defendant made improper threats of legal and criminal action, but alleges only a few isolated incidents of defendant's misconduct.  Accordingly, the Court finds that an award of $800.00 in statutory damages is appropriate.

### III.  ATTORNEYS' FEES

Section 1692k(a) of the FDCPA provides that a successful plaintiff may seek from defendant a "reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3).  To determine a reasonable fee request a court must begin by calculating the "lodestar amount."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A party seeking an award of attorneys' fees must establish the reasonableness of each dollar and each hour for which the party seeks an award.  *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

### A.  Hourly Rate

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience.  *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996).  The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community."  *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998).  In order to satisfy her burden, plaintiff must produce "satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Here, plaintiff seeks an hourly rate of $275 for attorney Kevin Crick and $300 for attorney Derek H. DePetrillo, Docket No. 9-1 at 3, ¶ 9, 4, ¶ 16, and an hourly rate of $195 for paralegal Varian L. McCellon. *Id.* at 3, ¶ 12. The majority of recent cases in this district have found that a reasonable attorney's fee in FDCPA cases for attorneys with Mr. Crick's and Mr. DePetrillo's experience is $250 per hour. *See Peterson-Hooks v. First Integral Recovery, LLC*, No. 12-cv-01019-PAB-BNB, 2013 WL 2295449, at *7 n.10 (D. Colo. May 24, 2013) (collecting cases). Plaintiff has not introduced any evidence that suggests that the prevailing rate should be raised. Plaintiff's only justification for the proposed $275 and $300 hourly rates is Mr. Crick's stated belief that such fees are reasonable and not uncommon. *See* Docket No. 9-1 at 3, ¶¶ 8-9, 4, ¶ 16. The Court finds that $250 per hour is the reasonable rate for Mr. Crick's and Mr. DePetrillo's time. The Court likewise finds that the requested $195 per hour for Varian McCellon is inconsistent with prevailing rates recently found in this district. *See Ryals v. City of Englewood*, No. 12-cv-02178-RBJ, 2014 WL 2566288, at *9 (D. Colo. June 6, 2014) ("I find that a reasonable rate to charge . . . for [the paralegal's] time in this case is $125 per hour"); *see also Park v. TD Ameritrade Trust Co.*, No. 10-cv-02599-PAB-KMT, 2011 WL 5439427, at *2 (D. Colo. Nov. 9, 2011) (allowing a billing rate for the paralegal of half of the less senior attorneys). Thus, the Court determines that a reasonable paralegal rate in this case is $125 per hour.

### B.  Number of Hours

In determining the reasonableness of the hours expended, a court considers several factors. First, it considers whether the fees pertain to tasks that would ordinarily be billed to a client. *See Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983),

*overruled on other grounds by Penn v. Del. Valley Citizens' Council for Clean Air*, 483

U.S. 711, 717 n.4 (1987).  Plaintiff must demonstrate that his counsel used "billing

judgment" in winnowing down the hours actually spent to those reasonably expended.

*Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).  If not, a court

should take extra care to ensure that an attorney has not included unjustified charges in

his billing statement.  *Id.*  A court should also consider whether the amount of time spent

on a particular task appears reasonable in light of the complexity of the case, the

strategies pursued, and the responses necessitated by an opponent's maneuvering.  *Id.*

"In determining what is a reasonable time in which to perform a given task," an attorney

submitting billing entries should consider the following factors: (1) the complexity of the

case; (2) the number of reasonable strategies pursued; (3) the responses necessitated

by the maneuvering of the other side; and (4) "the potential duplication of services"

caused by the presence of multiple attorneys when one would suffice.  *Ramos*, 713

F.2d at 554.  Ultimately, the Court's goal is to fix a fee that would be equivalent to what

the attorney would reasonably bill for those same services in an open market and fees

will be denied for excessive, redundant, and otherwise unnecessary expenses.  *Ramos*,

713 F.2d at 553.  The burden is on the party requesting fees to prove that its counsel

exercised proper billing judgment.  *Case v. Unified Sch. Dist. No. 233, Johnson Cnty.,*

*Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) ("Counsel for the party claiming the fees has

the burden of proving hours to the district court by submitting meticulous,

contemporaneous time records that reveal, for each lawyer for whom fees are sought,

all hours for which compensation is requested and how those hours were allotted to

specific tasks").

In *Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989), the Supreme Court found non-compensable "purely clerical or secretarial tasks [which] should not be billed at a paralegal rate, regardless of who performs them." *Id.* at 288 n.10.  A review of plaintiff's time entries reveals that the paralegal in this case billed 0.2 hours for filing an executed affidavit of service.  The Court also finds that Mr. Crick unreasonably billed 0.2 hours for receiving ECF notices regarding the various filings in this case between February 4, 2014 and March 3, 2014.  The Court will reduce the attorneys' fees award in this case by 0.2 hours each of Mr. Crick's and Mr. McCellon's time.

### C.  Lodestar Amount

Based on the aforementioned conclusions, the Court finds that the lodestar figure for plaintiff's attorneys' fee request is $2,270.00.  This fee award is reasonable given the issues presented in this case and it is also adequate to attract competent counsel to similar cases without producing a windfall for attorneys.  *Blum*, 465 U.S. at 893-84.

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff Katrina Terry's Motion for Default Judgment [Docket No. 9] is **GRANTED**.  It is further

**ORDERED** that default judgment shall enter against defendant WSA, LLC.  It is further

**ORDERED** that $800.00 in damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) are awarded against defendant WSA, LLC and in favor of plaintiff Katrina Terry.  It is further

**ORDERED** that plaintiff Katrina Terry shall be awarded $2,270.00 in attorneys' fees.  It is further

**ORDERED** that, pursuant to 15 U.S.C. § 1692k(a)(3), within 14 days of the entry of judgment, plaintiff may have her costs by filing a bill of costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.

DATED December 29, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge